All right, thanks. And we have called the case Drummond v. Robinson Township. Mr. Gura, you have the floor, sir. Thank you, your honor. May it please the court, Alan Gura for the appellants. I reserve 10 minutes of time for rebuttal. Let's imagine for a moment that we had challenged the regulation of an adult bookstore, and the district court dismissed the case simply because, quote, regulations addressing the intensity of land use relate directly to, and thus reasonably fit with, nuisance prevention and protecting the public health, safety, and welfare, close quote. That would probably not be affirmed because in Phillips v. Borough of Keyport, this court held that the First Amendment requires three things in constitutional land use challenges. It requires that the defendants, quote, identify the justifying secondary effects with some particularity, that they offer some record support for the existence of those effects and for the ordinance's amelioration thereof, and that the plaintiffs be afforded some opportunity to offer evidence in support of the allegations of their complaint, to insist on less is to reduce the First Amendment to a charade in this area, close quote. Now, how much does the First Amendment have to do with this, Mr. Gura? Because you and your opponents are sort of cross purposes, and I'm having, on this issue, how much can we look or should look to First Amendment law? I get the sense that you don't like the district court's application of time, place, and manner restriction law from the First Amendment in this context. Maybe I'm wrong about that, but should we be paying, like, serious attention to First Amendment law here, or should we just be focused on Marzarella and our Second Amendment jurisprudence? Yes, Your Honor. The First Amendment has always been a guide the district courts have leaned on in making Second Amendment law. Obviously, Second Amendment law is less developed than the First Amendment. It started a bit later. Marzarella and all that falls from it try to draw upon First Amendment standards. So we are in agreement, I think, with the township, and perhaps even with Mr. Davey, that the First Amendment does offer a guide when you look at Second Amendment cases. The problem with the district court's decision is not that it applied the First Amendment doctrine. It's that it applied a very different doctrine that has actually no footing in First Amendment land use type cases. I think where we're together with the township on is this idea that we can look to cases in the First Amendment, cases that deal with secondary effect doctrines, and try to draw some information from those cases. Well, all those cases require those things that I just listed. They require that the township provide some specific reason. They can't just say, well, it's good for us to regulate. Sure, it is. And we're not against the idea of regulation. But they have to specify the reason they're regulating. Are you accepting, I took it from the briefing, that you agree that intermediate scrutiny is the right means and scrutiny that's supposed to be in place here? No, Your Honor, we're not accepting it, but we're also not resisting it. Our position is that the whether we have intermediate scrutiny, let's say it's intermediate scrutiny. Intermediate scrutiny still requires a showing by the government that there is some reasonable fit between the objective, it has to be spelled out, and what the statute is doing. And we cited... What argument are you offering for anything other than intermediate scrutiny? Well, I think that we would suggest that, look, this is a fundamental right, to the extent that in scrutiny land, strict scrutiny would be more appropriate. But we really didn't develop that argument much. We're okay with intermediate scrutiny right now. The fact is that even intermediate scrutiny would require something. It would require some showing by the township, it would require something that tells us why they're doing this and what's the evidence, what's the basis for it. So if we're looking at means and step two, you accept the proposition that the ordinance here, the right analogy is, for starters, that it's content neutral? Content neutrality is not really an issue one way or the other in the Second Amendment. We do believe that the ordinance is targeting Second Amendment activity. It applies only to gun clubs, to what the statute calls a sportsman's club. So it's not neutral in the sense that it's targeting Second Amendment activity, but I don't know that there's a perfect analog between, say, content or viewpoints. The Supreme Court's marched through this in the First Amendment context in Renton and other cases. So you agree that this ordinance is targeting, its predominant interest is the targeting of the secondary effects, not of the exercise of Second Amendment rights per se? No, we do not concede that the township is acting here in good faith or that this is some kind of thought-out, careful effort to regulate a nuisance. Quite the contrary. The complaint alleges that this is essentially a grudge that's been running for many years between certain people in the township and others. But that's all irrelevant, isn't it? You're making a facial challenge here, not an ad-lib challenge, unless I'm very much mistaken. So all the bad blood there may be has nothing to do with what we're looking at, right? Yes, Your Honor. That was merely a response to the question of whether or not the impetus for this regulation was a good-hearted, good-faith effort to regulate a nuisance, and it's not. Okay. Go ahead and finish Judge Krause's answer to her question, please. Okay. Pardon me, Judge Krause. I was actually going to move on to something a little different. In fact, stepping back a little bit, before we get into the application of intermediate scrutiny, why shouldn't we be looking at this at step one of Marzarella? And that is to say, we sent this back for the court to look first at history and tradition, but that doesn't preclude looking at whether certain types of zoning ordinances and the effect that they have were commonly accepted as part of the history and tradition in the founding era. Where we have, even in Heller itself, the recognition that a major city like Boston can relegate shooting ranges to just two locations in the city, why shouldn't we conclude that an ordinance that has the same effects here, that is, that full-capacity shooting ranges are left to industrial zone and to special conservation zone, that falls outside the scope of the Second Amendment when we're looking at the Marzarella test? Because, Your Honor, there's absolutely nothing in the record, nor is there anything anywhere else outside the record that I'm aware of or that any of the parties or the amici have identified that shows a framing era analog for the types of regulations here. We have two regulations at issue. We have one regulation that provides that it's okay to have this club, it simply cannot operate at a profit. There's nothing in the framing era that tells us that the profit motives were constrained one way or the other. The second regulation is one that purports to prohibit the firing of centerfire rifles, but note that it only operates if the property is used as a sportsman's club. There is no prohibition on firing guns in this location. People do it all the time. Mr. Drummond is still using that range, it's just not opening up as a business. And the code, in fact, tells us that you can have a range there provided that it meets certain safety standards. So the idea that the framing era saw laws prohibiting the shooting in this one particular context where the range is otherwise proven safe, there's no record support for that. And Marzarella asks at step one, only if the regulation burdens conduct secured by the second amendment. And this is the part that the district- We're not looking at the right to sell in a particular location. When we're talking about to bear arms, to acquire them and to maintain proficiency. And so when we're analyzing a statue like this, why aren't we, as the Seventh Circuit did in Nizel, we may have this ordinance, but it fits into a zoning scheme. And within that zoning scheme, you have not alleged that there is any restriction that would amount to anything substantial on the right to acquire arms or to maintain proficiency in the township, in the context of the zoning scheme. Isn't that what we're really interested in here rather than where they may or may not allow sportsman's clubs? No, Your Honor. First of all, there is no substantial burden variable in step one. That's something that the Second and Ninth Circuits have done in DeCastro and Teixeira. In the first opinion, the district court issued, it relied on those explicitly and the prior panel vacated that opinion, said, no, the only thing that you look at at step one is whether or not the regulation burdens second amendment protected conduct. If it does, then you go to step two and at step two, you can talk about substantiality. If it's part of some time, place and manner test, but it is not appropriate to have a- And Marjarelle does allow for this. This would be a very radical alteration of Marjarelle. If this court were to suddenly say, well, you can pass step one as an historical and textual matter, but you still don't get step two because the judge determines that he or she is less enthusiastic about it than perhaps the plaintiff. And so there's a judicial veto on the second amendment and respect for your honor, go ahead. Okay. So assume for the sake of discussion, we thought you're right. And in fact, the judge and the other side seemed to agree where it's step two, right? Isn't that where the fight has been at this point at this stage? So if we accepted that that were true for purposes of discussion, can you explain what the district court got wrong in saying, I'm going to look at time, place and manner. Was that just going off on the wrong path? I know your assertion that there was not evidence, they didn't put forth evidence, et cetera, et cetera. So you don't have to go there. I follow you on that. But was the analytical step at the first step out of the box at step two, correct or incorrect to say, we've got important interests here, time, place and manner is the right approach to take in assessing the fit of the regulation to meet the important needs of the township. Time, place and manner may apply to one of the regulations, but not the other. I think that you can say that the firing range restriction, the argument that this is a manner of shooting using a particular type of rifle. That's an argument that makes a lot more sense than to say that whether you make a profit or not at the club is a manner of exercising second amendment rights. I believe that that relates to how those rights are. Speak to the district court's assertion that there's an intensity that goes with commercial activity and that intensity is subject to a time, place and manner kind of restriction that that's a logical step for a township to make in deciding whether to allow for profit as opposed to nonprofit activity. Speak to that directly, please. Okay. There's no evidence that would show that. I think that there's a supposition that that's true, but what if Mr. Drummond won the lottery and decided to operate this as a charity and he was giving away free guns and range time to everybody? There'd be a lot more land use intensity going on in that place than if you charged people, you know, a good amount to go use the property. So just because something is profitable or not profitable doesn't necessarily tell us about how it's operated, but let's accept for the sake of argument, Judge Jordan, that you're correct and that this is a good proxy. Well, I'm not making that assertion. I'm trying to get you to respond to the district court's assertion. Let's accept the district court's assertion then. My apologies. Let's accept the district court's assertion that this relates to land use intensity and that the township can then regulate land use intensity. Well, we agree that the township can regulate land use intensity, but what the township needs to do is actually show us with evidence, with some kind of actual reasoning, why it is that this is necessary. They need to show us that the regulation will ameliorate that effect. They need to give us the opportunity, the court needs to give us the opportunity to have notice, to be heard, to present our own evidence. Step two requires a lot more than looking at the complaint and saying, eh, it sounds like, you know, they can regulate land use for sure. Nobody disputes that they can regulate land use. We admit they can land use. That's the reasonable fit. Let's now move on to alternatives. But time, place, and manner restrictions, if you look at all the case law, and I know we have a dispute about how it's quoted, all the case law has in time, place, and manner still requires a showing of a reasonable fit. The alternatives, the substantial burden aspect of it is the second part of the test. But the district... But those same cases say that if the burden is minimal, that of necessity establishes the fit. At that point, it's really sufficient if the government is able to show that there is a substantial interest. We said, you know, in Broody 1, that there will be cases where it's scrutiny at the pleading stage because the burden is so minimal. Why isn't that this case? When we look at the zoning regulation as a whole, there are two other districts within the township where the center fire rifles can be shot. And throughout the township, arms can be sold. So where is the burden on the Second Amendment rights, on the core Second Amendment rights, that goes beyond de minimis? We're talking here about an historic gun club that had at one point 800 members. We're talking about a place that had, you know, every single shooting facility that one can imagine. It is not for a court to sit in chambers and look at a complaint and say, well, I think no one's going to miss this gun club. It's 265 acres of shooting, 800 members. But that's an as-applied challenge, looking at the right of a particular seller. Don't you need for a facial challenge, a Second Amendment facial challenge to show that, give us at least a plausible inference that there is no set of circumstances where there would be a sufficient opportunity to exercise the Second Amendment rights here? And that's from the perspective of the public, right, to bear arms and to maintain proficiency in arms. Why isn't that provided fully within the zoning scheme, albeit in different locations in the township? Your Honor, first of all, the no set of circumstances test is not the correct test. Bruni in this court has explained at some length, I know that's Judge Jordan's opinion, that it's simply not the test. General sweep is the alternative that's often used. And of course, the Supreme Court has made decisions, we've cited some of those. Salerno is not something that can overturn Heller, and it certainly does not overturn Marzarella either. Heller was- I understand, whether we're talking Glucksburg or Salerno. I mean, okay, Heller was a facial challenge. And the Supreme Court even said in Heller, we strike this down, but Heller still needs to show he's not disqualified in order to obtain his permit. The Supreme Court recognized in Heller, that there are going to be dangerous people. I know there's a dispute about who exactly, but there are going to be people who won't qualify for the strike. Nonetheless, you can't have such a broad ban for everyone. Likewise, Marzarella, in the case as an interpretive said over and over again, applies to facial challenges. It applies to as applied challenges and facial challenges. And so- Okay. Mr. Guerra, good. You're good. You've reserved 10 minutes. So let's go a couple minutes past that so we could answer Judge Kraft's question, but we're going to move on here and have you back on rebuttal. Ms. Gill, do you have the ball first for the township? Well, I will take the ball first, Your Honor. Thank you. May it please the court. This court previously held that the trial court below neglected to apply a textual and historical analysis in evaluating at step one of the Marzarella test, whether the township placed a burden on plaintiff's Second Amendment rights. Instead, what the trial court did was apply time, place, and manner test at step one, when that, in fact, should have been applied at step two. Now on remand, that is exactly what the trial court did. In fact, it went even further and reversed its prior course and found that the ordinance did burden ancillary Second Amendment rights. We take no- You're accepting that, right? You haven't cross appealed. You haven't said, wait, that's wrong, right? You're correct. We take no position on that finding, Your Honor, because we believe that the step two analysis done by the trial court appropriately finds that the facial challenges fail, but we take no position on the trial court's conclusion at the step one analysis that it took on remand. But what specifically did the trial court rely on at its position? Sure. At step two, the trial court looked through Second Amendment cases, Heller, it looked at Drake, it looked at Marzarella, obviously, and it also looked at the evidence that was referenced in this case, the concerns- What's that? of the joint appendix. Okay. Go ahead. It also referred to the language of the ordinance itself and the purposes that were outlined in the ordinances that- How does that constitute evidence? Do you accept the position that Mr. Gura has put forward that once you're at heightened or for the district court to make assertions, you've got to actually come forward with some evidence to show this particular ordinance actually furthers those important identified interests and does it in a way that's narrowly tailored? And that that's not a matter of looking at cases, that's a matter of looking at actual evidence. Do you agree or not agree with that statement of law coming from Mr. Gura? I don't believe it can be a hard and fast rule. I think that if you start getting into the situation as the plaintiffs suggest in this case that at any step two Marzarella analysis, you have to have empirical data and statistical evidence to support the reasons to show that the statute fits. That's a slippery slope. How about some evidence? Okay, what evidence did the district court consider? Sure. The district court considered the purpose of the ordinance. It looked at the language of the statute and it concluded that the purposes outlined in the ordinances are sufficient. It also looked at the concerns that had been communicated by the residents of the township that was documented in the record. The concerns historically may or may not have any relevance presently to the extent you're talking about these nuisance suits 20 years ago. But you've urged us to affirm saying it's because the plaintiff here did not plead a lack of alternatives. It isn't the burden of proof once we are at step two and applying intermediate scrutiny. Isn't the burden on a township to substantiate the interest that it asserts as important interest and to show that there are reasonable alternatives available? Yes, and I believe that's been done that. Yes, the township has done that. There have been produced various alternatives for residents. The commercial establishments throughout the township were produced at one of the exhibits in the joint appendix. But if you're talking about the exhibit that is an attachment to the motion to dismiss of a printout from Google, how is that something at the motion to dismiss stage that the district court or we for that matter could take notice of? I think it's something that can be judicially noticed. It's facts that are common knowledge of all of the location and existence of other commercial establishments within the residence that can provide. That could be it, yes. What about the township even coming forward with the official map? I mean, maybe something like that a court could take judicial notice of. Did the township even put the official zoning map into the record here? I believe that was part of the zoning ordinances that were attached. But for the sake of brevity, I don't think we attached the entire ordinance in the joint appendix. But I do believe that there was a map made of record during the proceedings below. Did the township offer any evidence to support its distinction or its banning of centerfire rifle rounds as opposed to rimfire? There might be a distinction. One may be more powerful, carry a heavier load. Was any of that produced for the district court? No. The township argued and the trial court adopted the intensity argument because of the type of gunfire that was being heard. On the basis of what evidence? We're at a motion to dismiss stage here. Is it fair to say that indeed there was no evidence? I mean, there was some attachments to a complaint maybe, but there wasn't evidence in front of the district court. The district court looked, like you said, at the ordinance and looked at some cases and said, kind of stands to reason. I like it. You're done. Wasn't that how it came out? That's how it came out. And I think that the court has the discretion to do that as it did in Drake and as it did in Marzarella. Isn't that just rational basis review? What becomes of intermediate scrutiny? What becomes of any heightened scrutiny if all the court has to say when you're talking about this allegedly heightened scrutiny, if all that has to be done is say, you know, I looked at it and it feels right to me. That is an important interest and I'm good with that. How is that any different from rational basis review? Because I think whenever the court applied the heightened scrutiny in this matter, it evaluated further and with a bigger lens the objectives that the township was trying to achieve along with the language and the actual changes that were being made to this ordinance. I'm struggling with that a little bit. I'm just struggling with the idea that you can meet a heightened scrutiny on the basis of zero evidence. When we say the government authority has the obligation to meet a burden of proof, that kind of implies that there's going to be proof. And what I hear you acknowledging and I think the record supports what you're right to acknowledge it is there's precious little in the way of proof here. There is a district court judge who agrees with the township, but that's not on the basis of proof. It's on the basis of it makes sense. Now how can that be heightened scrutiny? It could be heightened scrutiny in the form of the way the court looked at it and the way that the court reconciled the restrictions with the objectives that I don't think anybody takes issue with in the township, you know, regulating land use. Nobody does. You're right. You are correct. Nobody takes issue with that. What we're arguing about here, what we're talking about and hearing you people on is, is what the ordinance shift doing actually furthering those important state interests in a way that one under heightened scrutiny could say are narrowly tailored to meet that end. That's the thing you've got to speak to. And it's not immediately evident in the district court's reasoning that it went through that, those analytical steps. So if you can help us see where it did that, that would be much to the advantage of the township. And I can just refer to the cases that the court relied upon and the statute itself, along with, as the court noted, the, there was evidence submitted in the terms of the alternatives, alternative gun shops, concerns of the community. None of those cases are dealing with a requirement that a range operate without profit or that it can operate with all activities except for shooting of one type of firearm. It's not relying on studies or empirical data from other cases that did any kind of means end analysis there. And let's say we accept that the interests that are set out in the ordinance are the township's interests and that they're important interests. How does a requirement that a range operate without profit further the ends of safety or of nuisance? And where is evidence of that? And likewise, with the restriction on the use of centerfire rifles. How does that, where you're allowing other shooting to go on, on that same premises, how does this ordinance further the purported ends of the township? Sure. And I think the trial court discussed that in her opinion. And I think it was in the context of, you don't leave common sense at the door. When you have a commercial establishment, the intensity is going to increase. When you have a non, a nonprofit, the intensity is, is not expected to be in, not anticipated to be at the level of a commercial enterprise. Likewise, when, when there are restrictions at the type of, of firearms that can be discharged on the property, that likewise goes to the intensity argument, which I think what the courts, what the trial court is, a lot of this is a matter of common sense. There's nothing on the record. How do we intuit all of that from what we have before us? I'm sorry? I mean, how can we intuit all of that from the complaint and exhibits that were before the district court and are now before us? I mean, the district court here, it made, made rather plain that at step two, it was, it was placing the burden on, on the plaintiffs to show that there were not alternatives and that this was not reasonable, but it isn't the burden the other way. On step two, yeah, I agree. I agree with, with that. Yes, at step two. And so for, for all of the means ended analysis that you were just describing to us, that it does make sense in terms of foot traffic, or that there's something about this particular firearm that would make it more dangerous or more of a nuisance. If, if it were allowed to be shot at this, at this location, where did the township satisfy its burden at step two? How did you do that? And what can you point us to that's, that's before us on a motion to dismiss? Sure. We, and again, I don't mean to go say the same thing I did before it was, it's the actual language of the statute itself, the, and the cases that are, are analyzed by the trial court. Let me ask it a different way. Can you specifically point to any evidence the district court considered evidence and not conclusions? Alternative, I'm sorry, your honor. Evidence to support the restrictions. Can you, can you identify any evidence that district court was presented with in order to support its conclusions? The fact that the zoning ordinances permitted this type of activity elsewhere, the, the location of residential territories next to this tract of land. What about with respect to the center fire versus rim fire rounds? Any evidence? No, there was no evidence presented on that. And what about, and the evidence, as I understand, you're telling us with respect to nonprofit versus profit was her conclusion that there would be an increase in intensity of the land use. Is that right? Common sense perception. So no, again, again, no, no tangible evidence that we can correct. Okay. I understand your position. All right. Thank you very much, Ms. Gill. Will, if I've got my notes, correct. Mr. Davey has got 10 minutes of time as well. You've seeded that time to the amici here. So Mr. Davey, please proceed. Your honors and may it please the court. I represent the Giffords and ceasefire PA amici. I'd like to start with a question that judge Krauss asked very early on to Mr. Gura, which is that there just isn't a step one burden here at all. And this court should affirm the district court on step one. Drummond one instructed the lower court to separate out the two-step analysis and to perform a historical analysis for the purposes of step one. Although the district court did not do that, this court can affirm on any basis in the record. And under the district court, not only didn't do that, the district court did the opposite of that and said it did. It did burn the right. So if you're going to take that position, explain to us why the seventh circuit was wrong. Say that proficiency, the opportunity to train, range training lies close to the core of the individual right to self-defense. I actually don't disagree with the circuit about that. The issue here. If that's true, if that's true, if range training lies close to the heart of the second amendment and this ordinance burdens that in any way, it's not a question of how much it burdens it, it's does it affect it? If it affects it, then we go to step two, don't we? Sorry, let me take a step back. First, I think I would say first that it's at best an ancillary right. And second, I would say that they didn't plead the Azzell challenge. And I think that's the big problem here for the plaintiffs. The Azzell challenge at step one, they asserted a burden in a 230 something square mile city that they said effectively barred training in any circumstance. And in this case, in the complaint at issue here, the plaintiffs just haven't asserted such a burden because. So what you're saying, Mr. Davey, is the burden of proof is on them. You're trying to flip this around. You're saying even though this is an ordinance which will prevent the operation of this range on the business plan that this fellow has understood it can be operated on, even though it's clearly going to do that, that it's really not the burden on the government to address that. It's his burden to show there's no place else he could have done it. I don't even think it's a burden to show no place. I think what you're talking about, even in this question, Judge Jordan, refers to a specific property and a specific property where they would like to engage in commercial activity. And that's a classic as applied challenge. I apologize. I'm trying to get to your question. You said they didn't plead. Then that's the problem. They didn't plead at step one. And so I'm trying to figure out what you're getting at, because I understood them to plead and to say they're not letting me do the thing that I would like to do. And indeed, this ordinance is putting a burden on any range in the township, on any sportsman's club in the township. It's not letting them operate for profit. It's not letting them use center fire rifles. It's just not letting them do it, period. I understand that to be an assertion about a burden on the opportunity to train range firing. And if that's true, then why are we talking about step one at all? Why aren't we on to step two? Judge Jordan, I think the key issue here is the point that Judge Krause raised, which is that there are two other zones in an already small township that allow exactly the use that they're talking about. And for the purposes of a Second Amendment burden, there is no Second Amendment right to engage in commerce and a particular type of- Isn't that classically the step two question, and then it can no longer be constitutionally applied to anyone. There is no set of circumstances in which the statute would be valid. Their assertion is this is invalid across the board because it does burden a right and they haven't met heightened scrutiny. You seem to be making the argument that, wait, no, the burden's on them in the first place to show it couldn't happen someplace else. That seems to turn things upside down. Yes. I think that to answer your question, I think that for purposes of a step one analysis under this court's precedent, Heller itself talks about presumptively lawful categories of regulation. Two of those categories are, number one, conditions and qualifications on the commercial sale of arms. And another is- If we- I understand your argument at step one and the burden being on the plaintiff to show that this is even conduct that falls within the scope of the Second Amendment. But how can we do that without just going back and collapsing the step one and step two analysis? I mean, if the point is that historically, as long as there is not too heavy a burden and there are alternative places, then the particular limitation is not one of a sportsman's club operating for a certain period of time. But there is a limitation on the number of times that a  are necessary to make sure that we're getting this right. And, I think that's the point. But doesn't that analysis sound an awful lot like a time, place, and matter analysis that we're doing as to the restriction at step one instead of step two? Judge Krause, I absolutely agree with you. And I think, if anything, this highlights the trouble that the district court had the first time around before this court remanded. I think that the question of available alternatives is best thought of as a step two part of the analysis. And I am happy to talk about step two and would like to do that at some point. But again, for purposes of step one, presumptive lawfulness under Heller, you know, I think the presumption it's not- You're doing great. You're moving to step two. You're going just the exact direction you should have there, Mr. Davis. Keep going. Keep going. I will happily turn to step two. To be clear at step two, I think that the time, place, manner analysis and the available alternatives, and if you're looking at exactly the nature of the burden that they've asserted, the burden is so small that the amount of evidence, this court's cases, whether you're talking about Drake, whether you're talking about other courts and other circuits' cases, the burden is so slight that the amount- Counsel, that may or may not be right, but how do we know that at the motion to dismiss stage one way or the other? What do we have in the record before us where, you know, from- You've got two districts, but how do we know, you know, functionally that that's not the same sort of limitation to two percent effectively of the township where there could be any kind of practice for center fire rifles? Well, first of all, I mean, to the extent that the plaintiffs have not pled that, they have not pleaded the Azzell complaint. But that's step two, and you've agreed, I think, as has the township, that there the burden is on the township. It's not to show that there are not alternatives on the part of the plaintiffs. So where is that in the record? Where is the township, as you review the record, put in evidence to establish that? I'll point you to three things. First off, I want to point you to this court's own opinion in Drummond 1, which specifically held that there was a reasonable fit between the zoning regulations and the permissible and important objectives of nuisance prevention, safety and welfare, and public health, which is at JA 10. And so first, I think there's a law of the case element to this, you know, going on here. Second, I would point you to, you know, JA 124 and JA, the minutes, pages that directly precede that. You know, Drake itself on 436 says that predictive judgments on the part of a regulator are something that we should give very serious deference to, especially when there is such a small burden being asserted, if you accept that there is a burden at all. You do accept that there's a burden on the township, right? Sorry, I'm talking about a burden on the Second Amendment rights. I'm not conceding. That's okay. My point was going to be for the purposes of looking at what the town has done. You know, there are, you can tell from the minutes, there were four different zoning commission meetings held. They clearly held this over, discussed it. You know, the ordinance itself states what the town's interests are as it's regulating commercial activity. Did they take any evidence, you know, answer Judge Restrepo's question to Ms. Gill. Is there any evidence in the record at all that speaks to the difference between rim-fired and center-fired rifles and why this ordinance outlawing center-fired rifles furthers anything with respect to nuisance or public safety? Is there anything in the record on that? I think that there's, you know, and again, just from my review of the records, there are lots of citizens who have complained about the noise and the... Did any citizen come in and say, you know, I heard that center-fired shot, that was a lot louder than that rim-fired shot, and I can tell the difference, and that's a real problem. Because if you've got any evidence like that, it escaped me. They didn't like the range. They didn't like the range, but there was nothing in the record, was there, of anybody saying they could distinguish between center-fired and rim-fired was there? Your Honor, I have two responses to that. The first is that, you know, 50 caliber bullets, you know, we're talking about, you know, guns that are sort of like movie guns, and I think that to say that they're louder than the handguns at issue in, you know, some of the other cases that these courts have looked at, I think that that's a matter of common sense, and that demanding evidence from a town to that effect is... Common sense. I think demanding evidence of a town to that effect is asking a bit too much. Okay. Well, good. We've got your argument, and I appreciate the amicus briefs that were filed, and you're being present. Appreciate the township ceding you some time today to provide argument as well, Mr. Davey. Mr. Gura, you have 10 minutes for rebuttal, and it would be great if you would... I'll ask you to start with the assertion that we've just heard from Mr. Davey that there's a law of the case issue here, that the previous Drummond opinion actually said, hey, there's a good fit already. Is that accurate, inaccurate? You take issue with that? If you do, on what basis? I have no idea where Mr. Gura gets that. That's plainly not what's in the opinion. I wish he could have described that more. I'm sorry, that's just not in the paper. There is law of the case, however, in the First Opinion, to the extent that this court will stick with Marzarella. It's not going to change Marzarella. The one common thread that exists in all Third Circuit cases on the Second Amendment is Marzarella, and the structure of the Marzarella framework is that step one is an historical analysis, it's a textual historical analysis, and if conduct is burned at step one, then you go to step two, the Teixeira de Castro modification was rejected in Drummond 1. And so if this panel... Counsel, can you articulate, if we think of the right at issue as the right of citizens to bear arms and to maintain their proficiency at arms, if that's what we're looking at, and we're at step one, can you show us where is there any burden there? In terms of the conduct that is being protected, isn't that really about a seller in a particular location as opposed to the citizens' rights to access arms elsewhere in the township, which seems unaffected by this ordinance? The burden is as follows, Your Honor. I know Mr. Davey thinks that the burden is slight, he kept saying it's slight, slight, slight, and the district judge has the same view, and perhaps the district judge and Mr. Davey are not firearms enthusiasts. We're talking about Western Pennsylvania, and people here do appreciate the Second Amendment, and we do not know on this record, we have no way of knowing on this record, whether or not the township, the market here, would happily support not just this 265-acre property, but maybe 100 more like it. There's a supposition here that no one's going to miss this, but there hasn't been any kind of study that shows what the potential market is, that shows what the access is, whether there's sufficient access now, and we need to make sure that Mr. Drummond has the opportunity to access the market. Maybe he can expand the market, maybe he'll go out of business, maybe he's wrong and Mr. Davey's right, and no one wants this, and it's not a substantial burden, and therefore, he will lose money and go out of business. But is there any, within the township zoning ordinance, is there any restriction on your client opening a full capacity range in an industrial district? I, your honor, there is a very significant restriction right now, which is that in IBD districts, you cannot open up a so-called sportsman's club with center fire ranges, and you can't make a profit at it. That takes a large amount of the township out of Mr. Drummond and people like him to develop this type of business. That's a huge burden. Can it be done somewhere else? I don't know. Why isn't the right to operate a range in a particular location within the township? That's something within the scope of the Second Amendment. There is no right to operate either a gun store, a gun range, an abortion clinic, an adult bookstore, in a church, anything, in any particular location of one's choosing. These are all fundamental rights as understood by the courts, and they're all subject to some amount of regulation. But when the location, when your chosen location for a church or an abortion clinic, or yes, a gun range, is impeded by a township regulation, then you can go to court and the township will then have to prove why it's constitutionally adequate for that regulation to exist. What would the evidentiary hearing look like? Well, the evidentiary hearing, first of all, should follow the grant of a preliminary injunction. This thing was filed in the summer of 2018. The decision is probably not going to come out until sometime in 2021. We've been up and down several times in this particular court. Right, but just, so what would the hearing look like? The hearing, well, I believe that the township has had its opportunity to present evidence, and we've been through this for three years, and it's time for the injunction to issue. But if there were going to be a hearing later on, perhaps in summary judgment, perhaps at a trial, then the township would have to show some studies, some evidence, not just, well, somebody heard a gunshot and they think it's loud. I stress to your honors, shooting is still permitted and going on constantly on this property and all the neighboring properties. This is not a prohibition on the shooting of centerfire rifles in this location. It's a prohibition on a sportsman's club hosting centerfire rifle shooting in the city. So they'll need to show some evidence as to why this particular use in this particular way cannot be addressed by the existing ordinance. And this is something I think maybe it's been overlooked a little bit. We have to look at the ordinance that existed prior to this modification. It's still in the books. It's an article three, section 17C. The township ordinance tells sportsman's clubs that their gun rangers must illustrate that the design and direction of all firing lanes shall not present a danger to public health and safety, show adherence to best design practices such as the NRA range source to ensure safety. Other intensive uses shall present a plan to minimize any noise created by activities through buffering, acoustic engineering, or topography. Okay. Mr. Guerra, you're coming to the close of your time. I want you to follow up on something you started to speak to a few minutes ago. You said they've had their chance. The townships had you've been up here to us twice and they haven't borne their burden of proof. Is your position then that a remand, vacature and remand, is not appropriate here? That it's just, what, we direct the imposition of an injunction? You think that's the right next step? I think that if this goes back, respect for your honors, and this is why I've done something, my least favorite argument that I've ever made in 25 years of practice, and I say this honestly, is my request here for reassignment to another district judge. I find it distasteful, but I have a duty to my clients to try to help them out. And we are facing a district judge who has made it plain that she does not believe that any regulation is unconstitutional. And the first thing she did when she got the mandate was throw back the same thing essentially up to here. So I reassignment at this point is unfortunately... Yeah, but that's not speaking to, that's not speaking to my question. We'll deal with your reassignment request. My question to you is, do you really think it's the position of this court to direct the district court to impose an injunction? The fact, the very fact that you've gone now to the issue of reassignment tells me, no, you don't think that's right. That there's a district court judge needs to weigh the pros and cons on the basis of evidence and make a judgment about an injunction. That seems to be the import of your argument. Am I understanding you correctly? Your honor, let me try to rephrase this. The township had an opportunity when we filed their motion for preliminary injunction, they had an opportunity to present evidence in opposition. They presented what they presented, and I don't think it's a whole lot. That was their chance, and that was several years ago. So on the record as it exists now, as a matter of law, we are entitled to an injunction because we have on the current record before us. Now, maybe we will lose a trial. Maybe they will win a summary judgment. I can't make that prediction. I think we'll prevail, but this is a preliminary injunction only. At this stage, after three years, and with the record that's been made, with the township having plenty of chances, as a matter of law, we have a likelihood of success in the merits. We have irreparable harm, and the other factors weigh in favor of a preliminary injunction. Mr. Gura, who has the burden of proof for the injunctive relief? The plaintiff does. We've met it. We've submitted that. We have a gun club. It's being heavily restricted. There's no dispute as to how the ordinance functions. They are out of business. People are not able to access the right to the same degree that they would be able to access it without this ordinance. There's irreparable harm, and the township then could have come back and said, well, wait a minute. We've done a study. We've done a survey. We've analyzed things. This is how we came up with this, and we can show that it's narrowly tailored. Well, they didn't do that, so something beats nothing, and in this case, that's it. They've had their chance. I mean, why give them another bite the three or four more times, but it's over at some point. Likelihood of success is something that the plaintiff has the burden on, as you agree, and didn't the district court ask if you wanted to have an evidentiary hearing as to the issues of likelihood of success? No. No, we were not asked that. In fact, we had a hearing on the motion to dismiss and preliminary injunction, the first one that was the first appeal. We did have a hearing in Pittsburgh, but the second time around after this court remanded, there's one entry on ECF, which is this court's mandate, and the very next one is the second dismissal. We were not given notice. We were not given an opportunity to be heard. The township asked for and waited for nothing from either side. I mean, the judge just went ahead and did this, and that's kind of what fuels our feeling that we're not being heard. It's one thing if the court wants to disagree, and I understand courts don't always see things our way, and that's part of this business, but to have this kind of immediate throwing back of the mandate up to here strikes us as wrong, and we were not given a chance to be heard, and we were not offered a hearing, and I think that if there was a time for that, I would have been happy to answer any additional evidence that the township would have submitted. I would have been happy to return to get that. But you were offered that initially and declined. Am I right about the record on that? No. We had a hearing. Just on page four of the transcript where the district court asked whether you would like to have a hearing, and you indicated that that was not necessary? Well, because the evidence that was submitted at that point was what you see in the record. I mean, the township had already submitted what they submitted, and we felt that we had a chance to address it right then and there. So, yes, there was no need to come back again because they'd already filed what they filed. We did not understand that they were going to be filing more material. They filed. Thank you very much, Your Honor. All right. Thank you, Mr. Gura. Thank you, Ms. Gill and Mr. Davey. We appreciate the argument in this important case. We've got the